In re Nick Paul KAPNISON, Debtor.

HAWORTH, WHISENANT &
TAYLOR, Plaintiffs,

v.

Nick P. KAPNISON, Defendant.

Bankruptcy No. 11–84–00983 MA.
Adv. No. 85–0098 M.

United States Bankruptcy Court,
D. New Mexico.

Sept. 23, 1986.

222

Ella J. Fenoglio, Albuquerque, N.M., for plaintiffs.

Jennie Deden Behles, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court on the Complaint to Determine Dischargeability. Trial on the merits was had and counsel submitted legal briefs on the issues in question.

The facts are these: In 1981, as part of a settlement for a debt owing to the plaintiffs, the Haworth group, the debtor, Kapnison, pledged as collateral security for an $80,000.00 loan, 200 shares of common-stock of the restaurant, El Patron, Inc., a New Mexico corporation (Pledge Agreement). Under the terms of the Pledge Agreement Kapnison retained all voting and consensual powers pertaining to the pledged stock and only upon default could the Haworth group foreclose against the right of the pledgor, Kapnison.

In 1983, the assets of El Patron, Inc. were sold to II B's, Inc., Ken and Jody Baugh, subject to an agreement which required Kapnison to pay off obligations of the corporation secured on those assets. In 1983, II B's was in default under the purchase obligation. The balance due was discounted and a check for $196,000.00 was made payable to Kapnison and the law firm which represented him. These proceeds were used to satisfy obligations to the law firm and First National Bank.

The issue before the Court is whether the debt arising from the sale of corporate assets where the corporate stock has been pledged can be held non-dischargeable under the Bankruptcy Code.

Plaintiffs offer several theories to support their contention that the debt of $80,000.00 plus interest is non-dischargeable: 1) that defendant had a fiduciary duty to the plaintiffs and that the sale of the assets of El Patron, Inc., constituted an embezzlement or defalcation while acting in a fiduciary capacity; 2) that the sale of the assets of El Patron, Inc. constituted a conversion of plaintiff's security interest; 3) that Kapnison made a false representation to plaintiffs that he was pledging the assets of El Patron, Inc.

Defendant denies that the plaintiffs were in a fiduciary relationship with Kapnison or that plaintiffs relied and were damaged by representations of Kapnison. Further, Kapnison proposes that evidence of false representation is barred by the parole evidence rule.

Section 523 of the Bankruptcy Code delineates the exceptions to discharge. "A discharge ... does not discharge an individual debtor from any debt for ... (4) fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). "The phrase 'while acting in a fiduciary capacity' clearly qualifies the words 'fraud or defalcation' and not 'embezzlement' or 'larceny'." Collier on Bankruptcy § 523.14 at 92 (15th ed. 1986).

 A pledge is a contract for the delivery of personalty to be retained by the pledgee as security for the performance of some obligation due from the pledgor, title remaining in him and possession only passing to the pledgee. 72 C.J.S. *Pledges* § 2. Although the nature of the pledge transaction gives rise to a trust relationship between the pledgor and the pledgee, 72 C.J.S. *Pledges* § 21, the pledgee is not a fiduciary in the broad sense of the word. Bogert Trusts Rev.2d Ed. § 30 at p. 380 (1984).

The predecessor to § 523, section 17(a)(4) of the Bankruptcy Act, was interpreted by the Supreme Court to require a technical trust relationship rather than one implied from contract. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The Court determined that the trust relationship must exist prior to the transaction creating the debt. *Id.* This section would then reach only those whose debt arose as a result of the breach of this trust obligation, and not the commercial debtor whose debt preceded the default in the agreement. Pledges which are given as collateral for debts are covered by the Uniform Commercial Code § 9-102. Lower courts have demonstrated an unwillingness to find that commercial security agreements imposed a fiduciary obligation upon the debtor. In *In re Levitan*, the court found

> that it is not appropriate to make the mere violation of the security agreement a bar to a debt's dischargeability by attempting to transform what is in essence a security agreement into a trust agreement.

*In re Levitan*, 12 B.C.D. 835, 838, 46 B.R. 380 (Bankr.E.D.N.Y.1985).

 In the case at bar, the Pledge Agreement does not require that the debtor serve as a fiduciary. The Pledge Agreement provides for the rights and liabilities of the parties and nothing indicates either an express or implied intent of the parties that they were to be in a fiduciary relationship. Given that (1) the pledge given by Kapnison was in the nature of a security agreement and not a trust, (2) that the Bankruptcy Code requires explicit trusts rather than constructive trusts in establishing a fiduciary relationship, and (3) that the general rule of the Bankruptcy Code is one of favoring discharge, *In re Cross*, 666 F.2d 873, 880 (5th Cir.1982), we find that no fiduciary relationship within the meaning of § 523(a)(4) existed between the parties. Therefore, the defendant could not have breached such a relationship.

We next address whether the sale of the assets of El Patron, Inc. constituted a con-

version of plaintiff's security interest, thereby rendering the debt non-dischargeable as a willful and malicious injury.

 Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Conversion of another's property done intentionally and without justification, to the other's injury, is a willful and malicious injury within the meaning of the exception. Colliers on Bankruptcy § 523.16 at 112 (15th ed. 1986). The "willful" element means "deliberate or intentional." *Id.* at 111. Case law suggests that in order to except debts from discharge the movant must show the presence of an "aggravating feature" as evidence from which to infer malice. *Levitan, supra,* 12 B.C.D. at 839, 46 B.R. 380. The *Levitan* court listed as aggravating features (1) intent to do harm to the creditor, and (2) intent to obtain personal benefit at the expense of the creditor's rights after the creditor moved to assert his rights. *Id.*

 Here, the plaintiffs have failed to show any "aggravating feature" from which we could infer malice. The plaintiffs have not demonstrated that the debtor benefitted personally by the sale of the assets of the corporation. We note that the plaintiffs, the pledgees, had a lien on the stock of the corporation but not on any particular property of the corporation. 18 C.J.S. Corporations § 424. Had the pledgees taken a pledge on the corporation's assets they could have maintained an action against the pledgor for the recovery of the proceeds. 72 C.J.S. *Pledges* § 39. Such result could also have been accomplished by obtaining a security interest in the assets and perfecting same. We must find that the plaintiffs have not demonstrated that the debt in question should be excepted under § 523(a)(6).

 We next address whether the defendant made false representations to plaintiffs that he was pledging the assets of El Patron, Inc. Where a contract is clear and unambiguous on its face, no ex-

trinsic evidence will be allowed to interpret it. 30 Am.Jur.2d *Evidence* § 1016 (1967). The Pledge Agreement of the parties is unambiguous as to the property pledged. Evidence which would indicate that the assets were included in the pledged property would alter the terms and is therefore prohibited by the parole evidence rule. Where the meaning of a contract is ambiguous, evidence of intent is admissible but it cannot be used to alter plain and unambiguous language which must be applied as a matter of law. *Baum v. Great Western Cities, Inc. of New Mexico,* 703 F.2d 1197, 1205 (10th Cir.1983). Here, the Pledge Agreement has plain and unambiguous language that the corporate stock is the property to be pledged. There is no ambiguity. We find that no evidence as to the intent of the parties to pledge the assets is admissible.

The plaintiffs have not proved that the debt should be excepted from discharge.

This Memorandum Opinion constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.