**In re Rhonda Breaux KUNKLE,**
**Debtor.**

**Georgia Lottery Corporation, Plaintiff,**

v.

**Rhonda Breaux Kunkle, Defendant.**

**Bankruptcy No. 10–88247–MGD.**
**Adversary No. 10–06584–MGD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 31, 2011.

Oscar B. Fears, III, Georgia Department of Law, Atlanta, GA, for Plaintiff.

David J. Casey, David J. Casey, Esq., Smyrna, GA, for Debtor/Defendant.

## *ORDER GRANTING GEORGIA LOTTERY CORPORATION'S MOTION FOR SUMMARY JUDGMENT*

MARY GRACE DIEHL, Bankruptcy Judge.

This case involves a debtor who was a majority owner of a store that sold Georgia lottery tickets. The Georgia Lottery for Education Act governs the sales, duties, and responsibilities of lottery retailers. Section 523(a)(4)'s exception to discharge—for a debt incurred by debtor's defalcation while acting in a fiduciary capacity—is at issue because the Georgia Lottery for Education Act creates an express trust and also extends duties and liability to officers of a corporation. This store's failure to remit lottery proceeds as provided by the contract and governing law creates potential personal liability for this debtor based on her fiduciary duty owed to the Plaintiff, Georgia Lottery Corporation. For the reasons set forth below, the debt at issue, therefore, is deemed non-dischargeable.

The above-styled adversary proceeding is before the Court on Georgia Lottery Corporation's ("Plaintiff") Motion for Summary Judgment ("Motion"). (Docket No. 23). Plaintiff's Motion is supported by the Affidavit of Cameron Padgett ("Padgett Affidavit"), a copy of the Georgia Lottery Retailer Contract signed by Defendant ("Exhibit 3"), a Retailer Application signed by Defendant ("Exhibit 2"), an Account Summary for Defendant's Retailer Contract ("Exhibit 1"), and the letters addressed to Defendant terminating Turner Investment's retailer contract with the Georgia Lottery Corporation ("Exhibit 4"). Debtor Rhonda Breaux Kunkle ("Defendant") did not file a response or otherwise oppose the motion. For the reasons set forth herein, the Court **GRANTS** Summary Judgment in favor of Plaintiff. The undisputed material facts show that Defendant committed a defalcation while acting in a fiduciary capacity, and therefore, the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## I. *FACTS*

The undisputed material facts are as follows: In February of 2007, Defendant was the 51% owner of Turner Investment Family Consortium, Inc. d/b/a Turner Texaco ("Turner Investment"). (Statement of Material Facts, ¶¶ 1 & 2; Exhibit 2). On or about February 1, 2007, Defendant's company contracted to serve as a Georgia Lottery retailer. (Padgett Affidavit, ¶ 8; Exhibit 3). Defendant signed the Contract in her capacity as 51% owner. (Padgett Affidavit, ¶ 9; Exhibit 2).

Pursuant to the contract, Defendant agreed to sell lottery tickets, to deposit sales proceeds into a special bank account, and to be bound by the Georgia Lottery for Education Act and the Georgia Lottery Retailer Rules and Regulations. (Padgett Affidavit, ¶ 10; Exhibit 3). The Georgia Lottery Retailer Rules and Regulations require a retailer to establish a separate and designated bank account, into which the retailer must deposit lottery sales proceeds daily, by no later than the close of the next banking day after the retailer collects the proceeds. (Exhibit 3). Additionally, the Rules and Regulations require the retailer to authorize Plaintiff to electronically transfer proceeds from the designated bank account. (Padgett Affidavit, ¶ 11; Exhibit 3). Defendant established the required trust account at Georgia State Bank and authorized Plaintiff to electronically transfer proceeds from that account. (Padgett Affidavit, ¶ 11).

Defendant authorized Plaintiff to initiate electronic proceeds transfers from that account to collect Lottery proceeds. (Padgett Affidavit, ¶ 11). Electronic proceeds transfers from the dedicated trust account to Plaintiff take place on Tuesday of each week, unless Tuesday is a holiday, in which case the electronic proceeds transfers take place on the following business day. (Padgett Affidavit, ¶ 12). Under the terms of the Contract, all proceeds and all other proceeds due to Plaintiff constitute a trust fund until paid to Plaintiff. (Padgett Affidavit, ¶ 13; Exhibit 3).

Plaintiff sought to collect proceeds from Defendant's designated bank accounts for the accounting weeks ending on April 12, 2008, April 19, 2008, and April 26, 2008. (Padgett Affidavit, ¶ 14). According to the computer terminals in Defendant's store, Defendant's company had activated, sold, and Georgia settled lottery tickets in those weeks. (Padgett Affidavit, ¶ 14; Exhibit 1). Because Defendant's company, through its officers, employees, or agents, failed to deposit adequate proceeds into the designated account, Plaintiff was unable to electronically transfer the proceeds. (Padgett Affidavit, ¶ 15). Plaintiff terminated Defendant's retailer contract on or about May 5, 2008, due to Defendant's failure to maintain sufficient pro-

ceeds in its Electronic Funds Transfer banking account to pay its obligations to Plaintiff. (Padgett Affidavit, ¶ 22, Exhibit 4). Neither Defendant nor Defendant's company has remitted all proceeds due to Plaintiff, resulting in a $36,385.90 debt. (Padgett Affidavit, ¶ 20–21).

Defendant's Response to Plaintiff's First Set of Interrogatories provides some additional information. Defendant asserts she was only aware of a February 2008 deficiency of funds, at which time she paid the amount of the deficiency. (Interrogatories, ¶ 13). Defendant also contends that the tickets were stolen and activated, most likely by a staff member. (Interrogatories, ¶ 19). Defendant believes that since she was a victim of theft, she did not violate a fiduciary responsibility. (Interrogatories, ¶ 19).

On June 23, 2008, Plaintiff filed a Complaint in the State Court of Cobb County against Defendant, Turner Investment, and Joey Turner (49% shareholder of Turner Investment) contending that "officers of lottery retailers have a fiduciary duty to preserve and account for lottery proceeds." (Plaintiff's Exhibit F, ¶ 3). On May 25, 2010, a Consent Judgment was entered in the State Court of Cobb County. (Padgett Affidavit, ¶ 23). The Consent Judgment imposes a judgment against Defendant in the amount of $40,194.49, which includes $36,385.90 in unpaid lottery proceeds. (Padgett Affidavit, ¶ 23). In the consent judgment, Defendant and Turner Investment "acknowledge that they breached the terms of the contract with Plaintiff." (Plaintiff's Exhibit H, pg. 1). Defendant asserts a res judicata defense in her Answer. (Answer; Docket No. 5, page 1). Her Answer states that since Plaintiff received a judgment in contract law, Plaintiff is barred from bringing the claim in tort law. (Answer; Docket No. 5, page 1).

## II. *SUMMARY JUDGMENT STANDARD*

Rule 56 of the Federal Rules of Civil Procedure, applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, the court must view the record and all inferences therefrom in the light most favorable to the non-moving party. *See WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988). "The party seeking summary judgment bears the initial burden to demonstrate to the [trial] court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact." *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993), *reh'g denied,* 16 F.3d 1233 (11th Cir.1994). "If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material facts." *Id.* The nonmovant may not simply rest on his pleadings, but must show, by reference to affidavits or other evidence, that a material issue of fact remains. FED. R.CIV.P. 56.

Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Summary judgment is proper if the pleadings, depositions, and the affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Maniccia v. Brown,* 171 F.3d 1364, 1367 (11th Cir.1999).

### III. *APPLICATION OF LAW*

■ Section 523(a) of the Bankruptcy Code provides for various exceptions to the discharge of specific debts. Section 523(a)(4) states that a discharge under § 727 does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The creditor bears the burden of proving non-dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### A. Plaintiff established that Defendant held the lottery proceeds in a technical trust fund and, therefore, a fiduciary duty existed between Plaintiff and Defendant.

■ The first question is whether a fiduciary relationship existed between Plaintiff and Defendant. Whether a fiduciary relationship exists for purposes of § 523(a)(4) is a question of federal law. *In re Khalif,* 308 B.R. 614, 622 (Bankr. N.D.Ga.2004). The United States Supreme Court has articulated a narrow definition of "fiduciary," holding that the trust upon which the fiduciary relationship relies must be an express or technical trust. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). The fiduciary duties "must be specifically set forth so that a trust relationship is expressly and clearly imposed." *Eavenson v. Ramey,* 243 B.R. 160, 165 (N.D.Ga. 1999). The Georgia Lottery for Education Act, codified at O.C.G.A. § 50–27–21, by which Defendant agreed to be bound, sets forth all the elements of a technical trust. *In re Daniel,* 225 B.R. 249, 251–52 (Bankr. N.D.Ga.1998). The Georgia statute creates a trust fund, identifies the trust *res,* and states a lottery retailer's fiduciary duty "to preserve and account for lottery proceeds." O.C.G.A. § 50–27–21(a). The trust *res* comprised "all proceeds from the sale of lottery tickets or shares" includes "unsold instant tickets." *Id.*

The Defendant is a fiduciary under the Georgia Lottery for Education Act because the provisions state that "[a] lottery retailer *and officers* of a lottery retailer's business shall have a fiduciary duty to preserve and account for lottery proceeds and lottery retailers shall be personally liable for all proceeds." O.C.G.A. § 50–27–21(a) (emphasis added). Therefore, Defendant owed a personal fiduciary duty to Plaintiff to preserve and account for the proceeds from ticket sales and to preserve and account for unsold tickets.

This Court has previously concluded that the Georgia Lottery for Education Act creates a technical trust and imposes a fiduciary relationship under 11 U.S.C. § 523(a)(4). *Ga. Lottery Corp. v. Jackson,* 429 B.R. 365, 369–70 (Bankr.N.D.Ga.2010) ("The Georgia Lottery for Education Act, codified at O.C.G.A. § 50–27–21, by which Defendant agreed to be bound, sets forth all the elements of a technical trust.... Therefore, so long as Defendant was a lottery retailer, Defendant owed a fiduciary duty to Plaintiff to preserve and account for the proceeds from ticket sales and to preserve and account for unsold tickets."). *See also Ga. Lottery Corp. v. Ingram,* 2008 WL 7842077 at *2–3, 2008 Bankr.LEXIS 1036 at *7 (Bankr.N.D.Ga. Feb. 29, 2008); *Ga. Lottery Corp. v. McKibben,* 2005 WL 6490596 at *3, 2005 Bankr.LEXIS 297 at *9 (Bankr.N.D.Ga.

Jan. 5, 2005); *Ga. Lottery Corp. v. Premji*, 2006 WL 6584368 at *3–4, 2006 Bankr.LEXIS 2571 at *10 (Bankr.N.D.Ga. Sept. 14, 2006).

### B. Plaintiff established that the debt resulted from Defendant's defalcation of failing to adequately fund the designated lottery proceeds account.

 The second question is whether Defendant's debt to Plaintiff is for defalcation while acting in a fiduciary capacity. Defalcation is "a failure to produce funds entrusted to a fiduciary," but "does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.' " *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993). As a matter of law, when a lottery retailer's account does not contain sufficient proceeds to pay all lottery proceeds owed to Plaintiff, without an explanation for that deficiency, the retailer's actions constitute defalcation. *E.g. In re Daniel*, 225 B.R. at 252. Plaintiff presents undisputed facts that Defendant's account did not contain sufficient proceeds to pay all lottery proceeds owed to Plaintiff. As discussed in more detail below, the facts and circumstances presented by Defendant that could justify the lottery proceeds deficiency are insufficient as a matter of law.

### C. Defendant's potential defenses are insufficient to deny Plaintiff's Motion for Summary Judgment.

The next issue for the Court is whether Defendant has offered any meritorious defense. In her Answer to the Complaint, Defendant denies that Defendant had a fiduciary duty to preserve and account for lottery proceeds collected. (Answer, ¶ 11). Defendant also denies that she breached a fiduciary duty to Plaintiff by failing to pay over lottery proceeds collected. (Answer, ¶ 13). Defendant's Answer also seems to make a distinction between her individual actions and those taken by Turner Invest-

ment. (Answer, ¶ 9). Plaintiff argues in its Motion, and the Court agrees, that Defendant has failed to raise a viable legal defense and failed to raise any issue of material fact.

 Failure of a lottery retailer to make the required deposits into the lottery account fund "not on one occasion, but over a period of three weeks" is a defalcation on its face. *Ga. Lottery Corp. v. Lien Sun*, 2004 Bankr.LEXIS 2266 at *10 (Bankr.N.D.Ga. Sept. 27, 2004); *see also Ga. Lottery Corp. v. Premji*, 2006 WL 6584368 at *4, 2006 Bankr.LEXIS 2571 at *11–12. Defendant's failure to ensure that lottery proceeds were deposited in the lottery trust accounts for the accounting weeks ending April 12, 2008, April 19, 2008, and April 26, 2008 is a defalcation of Defendant's fiduciary duty.

Although the Motion for Summary Judgment is unopposed, Defendant asserts a potential theft defense in her Response to Interrogatories. Defendant asserts that she believes "someone, most likely a staff member, stole the tickets, activated them, and stole the winnings from [the] cash register." (Response to Interrogatories, ¶ 19). None of the facts provided by Defendant in her Interrogatories or Deposition are material when measured against the summary judgment standard on which the Court bases its decision. Even in reviewing the facts, allegations, and inferences in favor of Defendant, Plaintiff has met its burden in establishing that it is entitled to judgment as a matter of law.

The summary judgment standard sets forth that a party opposing the summary judgment must assert that a fact is genuinely dispute and must support such assertion by "citing to particular parts of materials in the record." Fed.R.Civ.P. 56(c)(1)(A). Further, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's

assertion of fact ... the court may ... consider the fact undisputed for purposes of the motion." FED.R.CIV.P. 56(e)(2). Defendant failed to oppose the Motion, yet her apparent defenses raised in the Answer and discovery responses are legally insufficient to overcome Plaintiff's § 523(a)(4) claim. Defendant's potential theft defense will be addressed by, first, assessing the facts in the record, and, then, by addressing a lottery retailer's fiduciary duties.

■ Defendant first asserts that one explanation for her failure to preserve all lottery proceeds and prevent the theft of lottery tickets is that her store was not under her control, but was under the control of either her co-owner Joey Turner, her son Johnny Turner, or the store manager. "[T]he fact that the debtor is not actively engaged in the day-to-day operations of the business and is not the person who collects and deposits the lottery proceeds does not mean that the debtor has no responsibility to account for the proceeds." *In re Ingram*, 2008 WL 7842077, 2008 Bankr.LEXIS 1036 (Bankr.N.D.Ga. Feb. 29, 2008). Indeed, Defendant's duties under the Georgia Lottery Rules and Regulations explicitly include duties to supervise and control employees, and the Rules and Regulations state that Defendant, as a retailer, is responsible and liable for employees' actions. Therefore, neither Defendant's lack of daily supervision at the store nor her lack of supervision on the specific dates provides a convincing legal defense or absolves Defendant's fiduciary duty.

■ Second, Defendant fails to provide any factual support to her assertion that the lottery tickets were stolen. Yet, a theft defense does not alter the liability imposed by the statute. Defendant asserts that she believes the tickets were stolen and that the theft of the tickets provides a meritorious defense to Plain-

tiff's non-dischargeability claims. Courts have held lottery debts to be non-dischargeable despite claims of theft, particularly when, as here, the debtor failed to account for proceeds for periods of weeks. *E.g. In re Sun*, 2004 Bankr.LEXIS 2266 (Bankr.N.D.Ga. Sept. 27, 2004) (finding defalcation when a debtor failed to verify deposits for three weeks). While there are some court decisions that suggest, in *dicta*, that theft could be a defense to claims of defalcation, Defendant has neither opposed the Motion nor set forth sufficient facts within the record to meet her burden at the summary judgment stage. *See id.* (stating that failure to account for proceeds for one day due to theft might be an innocent act). Here, the record shows that Defendant failed to remit proceeds for three weeks, although Defendant had a fiduciary duty to deposit proceeds daily.

■ Further, the fiduciary duty imposed on lottery retailers, includes the duty to "employ[ ] reasonable internal controls to avoid such a theft." *In re Ingram*, 2008 WL 7842077, 2008 Bankr.LEXIS 1036 (Bankr.N.D.Ga. Feb. 29, 2008). Nothing in the record evidences that Defendant employed any internal controls to monitor her staff or otherwise avoid the theft of tickets. Unsupported allegations that lottery proceeds were stolen are insufficient to raise any issue of fact. *Ga. Lottery Corp. v. Jackson*, 429 B.R. 365, 370 (Bankr.N.D.Ga.2010).

■ Defendant's fiduciary duty would also require immediate investigation of any missing funds. *BellSouth Telecommunications, Inc. v. Panjwany*, No. 03–09348, 2005 WL 6490600 at *3–4, 2005 Bankr.LEXIS 480 at *9–10 (Bankr.N.D.Ga. Feb. 9, 2005) (filing a police report two months after the debtor knew the lottery proceeds were missing was a defalcation of the debtor's fiduciary duty). The record shows that Defendant failed to ac-

cess the safe to confirm the amount of the lottery proceeds. Even taking the facts in the light most favorable to Defendant, Plaintiff has established that the debt arose from Defendant's defalcation while acting in a fiduciary capacity. It is irrelevant as to whether the defalcation is Defendant's failure to properly remit lottery proceeds or whether Defendant failed to take the required measures to safeguard the proceeds or immediately investigate any known missing proceeds. Therefore, Plaintiff is entitled to judgment as a matter of law.

## D. Res judicata is inapplicable to this proceeding.

■ The defense of res judicata offered by the Defendant is inapplicable. Defendant's Answer raises a potential res judicata defense. The Defendant asserts that res judicata applies because Plaintiff already raised the issue and received a judgment in state court. (Docket No. 5, page 1). Defendant also purports that since the state court judgment was based on a contract claim, Plaintiff cannot now bring a tort action. (Interrogatories, ¶ 1). The Supreme Court has held that a bankruptcy court should look beyond the record of a state court proceeding in which a consent judgment was entered to determine if the underlying debt is dischargeable. *Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." *Id.* The Consent Judgment specifically states that "[t]he intention of the parties is that the obligations of this Consent Judgment shall not be dischargeable in any proceedings under the U.S. Bankruptcy Code." (Exhib-

it H). However, *Brown* holds that bankruptcy courts are not bound by the terms of a state court judgment, and can look beyond the prior proceeding to determine dischargeability. *Id.* Therefore, parties are not free to contract around dischargeability.

■ Regardless of the language of the Consent Judgment, res judicata does not prevent Plaintiff from bringing this non-dischargeability action. Non-dischargeability determinations under § 523(a)(4) are within the exclusive jurisdiction of bankruptcy courts. *In re St. Laurent,* 991 F.2d 672, 675 (11th Cir.1993) (citations omitted) (explaining that "the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability.") Plaintiff has met its burden and established as a matter of law that the debt owing resulted from Defendant's defalcation when acting in a fiduciary capacity. Accordingly, as Plaintiff has proven non-dischargeability by a preponderance of the evidence and there are no remaining issues of material fact, it is

**ORDERED** that Summary Judgment is **GRANTED** in favor of Plaintiff.

**IT IS FURTHER ORDERED** that Defendant's debt to Plaintiff of $36,385.90 is hereby deemed **NON–DISCHARGEABLE.** Judgment for Plaintiff will be entered accordingly.

A separate judgment in favor of Georgia Lottery Corporation will be entered contemporaneously with this Order.